LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

LAW OFFICES OF BROWN & STEDMAN LLP
Edwin B. Brown (Bar No. 89447)
edbrownlaw@gmail.com
22342 Avenida Empresa, Suite 125
Rancho Santa Margarita, CA 92688
Tel:   (949) 459-5900
Fax:   (949) 713-7722

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO FLORES HUICOCHEA and NOEMI CALDERON, individually and as successors in interest to Francisco Eduardo Flores, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF EL MONTE; and DOES 1-10, inclusive,<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)<br>2. Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)<br>3. Due Process—Interference with Familial Relationship (42 U.S.C. § 1983)<br>4. Municipal Liability – Inadequate Training (42 U.S.C. § 1983)<br>5. Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>6. Municipal Liability – Ratification (42 U.S.C. § 1983)<br>7. Battery (wrongful death and survival)<br>8. Negligence (wrongful death and survival)<br>9. Violation of Cal. Civil Code § 52.1<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Francisco Flores Huicochea and Noemi Calderon, individually and as successor in interest to Francisco Eduardo Flores, deceased, for their Complaint against Defendants City of El Monte, and Does 1-10, inclusive, and allege as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal officer-involved shooting of Plaintiffs' son, Francisco Eduardo Flores ("DECEDENT"), on February 15, 2021.

/ / /

/ / /

**PARTIES**

3.   At all relevant times, DECEDENT was an individual residing in the Phoenix, Arizona.

4.   Plaintiff Francisco Flores Huicochea ("HUICOCHEA") is an individual residing in the City of El Monte, California and is the natural father of DECEDENT. Plaintiff HUICOCHEA sues in his individual capacity as the father of DECEDENT and also as the successor in interest to DECEDENT. Plaintiff HUICOCHEA seeks both survival and wrongful death damages under federal and state law.

5.   Plaintiff Noemi Calderon ("CALDERON") is an individual residing in the City of Phoenix, Arizona and is the natural mother of DECEDENT. Plaintiff CALDERON sues in her individual capacity as the mother of DECEDENT and also as the successor in interest to DECEDENT. Plaintiff CALDERON seeks both survival and wrongful death damages under federal and state law.

6.   At all relevant times, Defendant CITY OF EL MONTE ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the City of El Monte Police Department and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the City of El Monte Police Department and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, CITY was the employer of Defendants DOES 1-10.

7.   Defendants DOES 1-8 ("DOE OFFICERS") are police officers working for the City of El Monte Police Department. At all relevant times, DOE OFFICERS were acting under color of law within the course and scope of their

duties as police officers for the City of El Monte Police Department. DOE OFFICERS were acting with the complete authority and ratification of their principal, Defendant CITY.

8.     Defendants DOES 9-10 ("DOE SUPERVISORS") are managerial, supervisorial, and policymaking employees of the City of El Monte Police Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the City of El Monte Police Department. DOES 9-10 were acting with the complete authority and ratification of their principal, Defendant CITY.

9.     On information and belief, DOES 1-10 were residents of the City of El Monte.

10.     In doing the acts and failing and omitting to act as hereinafter described, DOE OFFICERS were acting on the implied and actual permission and consent of Defendants DOES 9-10.

11.     In doing the acts and failing and omitting to act as hereinafter described, DOE OFFICERS were acting on the implied and actual permission and consent of the CITY.

12.     The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

13.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

14.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

15.     DOES 1-10 are sued in their individual capacity.

16.     On or around August 11, 2021, Plaintiffs filed comprehensive and timely claims for damages with the City of El Monte pursuant to applicable sections of the California Government Code.

17.     On September 24, 2021, the Plaintiffs' claims were rejected by operation of law.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

18.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 17 of their Complaint with the same force and effect as if fully set forth herein.

19.     On February 15, 2021, at approximately 2:00 p.m. at or around the 12269 Garvey Avenue in the City of El Monte, California, Defendants 1-8 approached DECEDENT on foot, after allegedly receiving a dispatch regarding the DECEDENT.

20.     After Defendants DOES 1-8 made contact with DECEDENT, they deployed multiple lethal rounds against DECEDENT. None of these Defendants issued a warning prior to using deadly force against DECEDENT.

21.     At the time of the shooting and other uses of force against him, DECEDENT did not pose an immediate threat of death or serious bodily injury to the officers or to anyone else.

22.     After being shot with multiple rounds from a lethal firearm, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants DOES 1-8 did not timely summon medical care or permit medical personnel to treat DECEDENT.  The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering, and was a contributing cause of DECEDENT's death.

23.     DECEDENT was pronounced dead at the scene of the incident.

24.     Plaintiffs HUICOCHEA and CALDERON are DECEDENT's successors in interest as defined in Section 377.11 of the California Code of Civil Procedure and succeed to DECEDENT's interest in this action as the natural parents of DECEDENT.

25.     Plaintiffs incurred funeral and burial expenses as a result of the shooting.

## FIRST CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants DOES 1-8)

26.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 25 of their Complaint with the same force and effect as if fully set forth herein.

27.     On February 15, 2021, at approximately 2:00 p.m. in El Monte, California, Defendants DOES 1-8 approached DECEDENT after allegedly receiving a dispatch regarding the DECEDENT.

28.     On information and belief, after DECEDENT walked away from DOES 1-8, DOES 1-8 fired multiple rounds at DECEDENT without justification, striking him, and fatally wounding him.  When Defendants DOES 1-8 deployed the

lethal rounds against DECEDENT, none of these Defendants issued a warning prior to using deadly force against DECEDENT.

29.     Defendants' unjustified shooting and other uses of force against DECEDENT deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

30.     The shooting and other uses of force were excessive and unreasonable, particularly because DECEDENT posed no immediate threat of death or serious bodily injury at the time of the shooting and other uses of force.  At all relevant times, DECEDENT was unarmed. Moreover, Defendants DOES 1-8 all failed to give a warning that they were prepared to use force against him.  Further, the shooting and other uses of force violated the defendant officers' training and standard police officer training.

31.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death after the shooting, loss of enjoyment of life, loss of life, and loss of earning capacity.

32.     The conduct of Defendants DOES 1-8 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-8.

33.     Plaintiffs bring this claim as successors in interest to DECEDENT, and seek survival damages for the violation of DECEDENT's rights. Plaintiffs further seek attorney's fees and costs under this claim.

/ / /

/ / /

COMPLAINT FOR DAMAGES

## SECOND CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants DOES 1-8)

34.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 33 of the Complaint with the same force and effect as if fully set forth herein.

35.      After being shot with multiple rounds from lethal firearms, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants DOES 1-8 did not timely summon medical care or permit medical personnel to treat DECEDENT.  The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering and was a contributing cause of DECEDENT's death.

36.     The denial of medical care by DOES 1-8 deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

37.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

38.     Defendants DOES 1-8 knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

39.     The conduct of DOES 1-8, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-8.

40.     As a result of their misconduct, Defendants DOES 1-8, are liable for DECEDENT's injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

### THIRD CLAIM FOR RELIEF

**Due Process—Interference with Familial Relationship (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants DOES 1-8)

41.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 40 of their Complaint with the same force and effect as if fully set forth herein.

42.     Plaintiffs HUICOCHEA and CALDERON had cognizable interests under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiffs HUICOCHEA's and CALDERON's familial relationship with their son, DECEDENT.

43.     By engaging in the foregoing conduct, DOES 1-8, deprived Plaintiffs of their rights to a familial relationship with DECEDENT in such a manner as to shock the conscience, including by using excessive and unreasonable deadly force against him and by denying him medical care, all of which caused injuries that resulted in DECEDENT's death.  This conduct violated Plaintiffs' rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution. DOES 1-8, thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT, their son.

44.     By engaging in the foregoing conduct, DOES 1-8 acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

45.     As a direct and proximate cause of the acts of DOES 1-8, all Plaintiffs suffered emotional distress, mental anguish, and pain.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

46.     The conduct of DOES 1-8, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-8.

47.     Plaintiffs bring this claim individually and seek wrongful death daamges under this claim.  Plaintiffs also seek attorney's fees under this claim.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(By All Plaintiffs against Defendants CITY and DOES 9-10)

48.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 47 of their Complaint with the same force and effect as if fully set forth herein.

49.     Defendants DOES 1-8 acted under color of law.

50.     The acts of Defendants DOES 1-8, including fatally shooting DECEDENT, using other undiscovered force against him, and failing to give a warning that deadly force would be used prior to shooting, and then denying DECEDENT prompt and necessary medical care, deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

51.     The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal.  This includes training polices that have been adopted and maintained by the CITY with respect to the use of deadly force.  At least one example is the CITY's indifference to legislation for the State of California, AB 392, also known as the California Act to Save Lives that took effect in January 2020.  AB 392 amended Section 835(a) of the California Penal Code, and stated that lethal force was justifiable by a law enforcement officer only when necessary in defense of human life. Cal. Penal Code § 835(a) (West 2020).

52.     Penal Code § 835(a)(a)-(a)(2) provides further that it was the intent of the Legislature that peace officers "use deadly force only when necessary in defense of human life." Cal. Penal Code § 835(a) (West 2020).

53.     California Governor Gavin Newsom, upon signing AB 392 into law, issued a statement that further demonstrates his intent that AB 392 would alter existing law regarding police use of deadly force, and that it would require law enforcement policies to change. His statement provided at least in part that:

> "AB 392 modernizes standards for use of deadly force by officers. Specifically, this bill updates the existing deadly force standards to provide that deadly force may only be used when necessary. AB 392 also requires officers to use other techniques to address threats instead of using deadly force when safe to do so . . . . The provisions in AB 392 will be reflected in both law enforcement agency policy and officer training statewide, and will further ensure that all officers in California are trained to a higher legal standard."[1]

54.     According to the current policy manual the CITY maintains online as required by Penal Code § 1365, the CITY's Policy 300.4, in regard to the use of

---

[1] Press Release, Office of Governor Gavin Newsom, Governor Gavin Newsom Signs Use-of-Force Bill (Aug. 19, 2019), https://www.gov.ca.gov/2019/08/19/governor -gavin-newsom-signs-use-of-force-bill.

deadly force does not contain the "necessary" wording of AB 392 and Penal Code Section 835(a), but rather, reads according to the previous versions of Penal Code Section 835(a) by referencing only a "reasonableness" standard. Based on the currently posted policy, CITY has not updated is deadly force policy to reflect the current "necessary" standard.

55.     Specifically, CITY Policy 300.4, in regard to the use of deadly force, nearly follows verbatim Penal Code Section 835(a), except that the policy fails to include any reference to the word "necessary," and does not provide any guidance as to the new, separate standard as set forth in Penal Code Section 835(a) and AB 392.

56.     On information and belief, CITY police officers have shot and killed individuals since AB 392 took effect in January 2020, one of these individuals being the DECEDENT in the instant case.

57.     Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately, including training regarding the standards and "necessary" wording set forth in AB 392 and Section 835(a) of the California Penal Code.

58.     The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiffs' rights by Defendants DOES 1-8; that is, the defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

59.     The following are only a few examples of continued conduct by police officers working for the City of El Monte, which indicate the City of El Monte's failure to properly train its police officers:

     a) In *Garcia,* et al. *v. City of El Monte, et al.*, Case No. 2:21-cv-00460-CAS-PVC, Plaintiffs alleged that City of El Monte police officers beat them upon their heads with batons and flashlights as they were complying with officers' demands. This case is ongoing.

b) In *Garcia*, et al. *v. Cty. of Riverside*, *et al.*, Case No. 5:21-cv-01181-JGB-SHK, Plaintiffs argued that the involved City of El Monte police officers and Federal Bureau of Investigation officers used unjustified deadly force against them when they posed no immediate threat. The involved officers fired multiple times, striking Sonia Angelita Casteneda Montoya at least four times, killing her. The parties settled the case before trial.

c) In *Gonzalez v. City of El Monte, et al.,* Case No. 2:16-cv-09637-FMO-JEM, Plaintiffs argued that the use of force, including deadly force and shooting of Alfred Gonzalez multiple times was excessive and unreasonable. The parties settled the case for $65,000.

d) In *Sanchez v. City of El Monte, et al.,* Case No. 2:17-cv-03235-GW-AGWx, the City of El Monte settled with Plaintiffs for $760,000 after Plaintiffs alleged that City of El Monte police officers discharged their firearms at the decedent when the decedent posed no imminent threat of death or serious bodily injury to anyone.

e) Numerous other incidents of the use of excessive force by City of El Monte police officers also support Plaintiffs' claims for Municipal Liability in this case. For example, in *Gonzalez v. City of El Monte*, *et al. (*Case No. 2:18-cv-02346)*,* the City of El Monte agreed to a settlement after Plaintiff filed a civil rights lawsuit claiming the officers used excessive and unreasonable force and unlawfully assaulted him causing serious bodily injury; in *Garcia v. City of El Monte, et al.* (Case No. 2:18-cv-05129-DSF-AGR), the City of El Monte settled with the Plaintiff after a jury verdict in Plaintiff's favor, where Plaintiff alleged the involved officers unlawfully arrested him and used excessive and unreasonable force in so doing; in *Aguilera v. E. Ramos,*

*et al.* (Case No. 2:21-cv-01913-FMO-JEM) the City of El Monte settled with a Plaintiff who argued the Defendants' use of a choke restraint, punches to Plaintiff's face, kicks to the Plaintiff's groin, repeated use of a taser, and strikes with batons that broke Plaintiff's tibia bone constituted an excessive and unreasonable use of force; in *Alvarado v. City of El Monte, et al.*, (Case No.: 2:14-cv-08430-RGK-JEM), the City of El Monte settled a lawsuit with a Plaintiff who alleged officers used excessive and unreasonable force when they shot him multiple times, causing injury to his groin area, scrotum, and testicles, and later beat him; in *Le, et al., v. City of El Monte, et al.,* (Case No: 2:14-cv-04579-SJO-SS), the City of El Monte settled a lawsuit brought by the family of a schizophrenic man who died after El Monte officers tased, kicked, and beat him with a flashlight in his home; in *Montes v. City of El Monte, et al.*, (Case No. 2:20-cv-00468-SS) a jury awarded $235,000 in compensatory damages and $1,000,000 in punitive damages to the Plaintiff who City of El Monte police officers used excessive force against when they struck Plaintiff in the head and chest repeatedly with closed fists for no apparent reason.

60. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

61. Accordingly, Defendants CITY and DOES 9-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

62. Plaintiffs HUICOCHEA and CALDERON are DECEDENT's successors in interest as defined in Section 377.11 of the California Code of Civil

Procedure and succeed to DECEDENT's interest in this action as the natural parents of DECEDENT.

### FIFTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants CITY and DOES 9-10)

63.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 62 of their Complaint with the same force and effect as if fully set forth herein.

64.     Defendants DOES 1-8 acted under color of law.

65.     When Defendants DOES 1-8 fatally shot DECEDENT, and when Defendants DOES 1-8 denied DECEDENT prompt and necessary medical care, Defendants DOES 1-8 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant CITY.

66.     On information and belief, Defendants DOES 1-8 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

67.     Defendants DOES 1-8 together with other CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     Using excessive force, including excessive use of deadly force;

(b)     Providing inadequate training regarding the use of deadly force;

(c)     Employing and retaining as police officers individuals such as Defendants DOES 1-8 whom Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)  Inadequately supervising, training, controlling, assigning, and disciplining CITY officers and other personnel, including Defendants DOES 1-8, whom Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including a failure to train with respect to the use of lethal firearms;

(e)  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY officers;

(f)  Failing to adequately discipline CITY officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)  Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h)  Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i)  Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code,

the officer being questioned will claim ignorance of the other officers' wrongdoing;

(j) Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings and other uses of force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people; and

(k) Maintaining policies and procedures relating to deadly force that are inconsistent with the current law in the State of California, that took effect in January 2020, under AB 392, now codified in California Penal Code Section 835(a), which created a standard for the use of deadly force as only "when necessary in defense of human life" Cal. Penal Code § 835(a) (West 2020).

(i) The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal. This includes training polices that have been adopted and maintained by the CITY with respect to the use of deadly force. At least one example is the CITY's indifference to legislation for the State of California, AB 392, also known as the California Act to Save Lives that took effect in January 2020. AB 392 amended Section 835(a) of the California Penal Code, and stated that lethal force was justifiable by a law enforcement officer only when necessary in defense of human life. Cal. Penal Code § 835(a) (West 2020).

(ii)   Penal Code § 835(a)(1)-(2) provides further that it was the intent of the Legislature that peace officers "use deadly force only when necessary in defense of human life." Cal. Penal Code § 835(a) (West 2020).

(iii)  California Governor Gavin Newsom, upon signing AB 392 into law, issued a statement that further demonstrates his intent that AB 392 would alter existing law regarding police use of deadly force, and that it would require law enforcement policies to change. His statement provided at least in part that:

> "AB 392 modernizes standards for use of deadly force by officers. Specifically, this bill updates the existing deadly force standards to provide that deadly force may only be used when necessary. AB 392 also requires officers to use other techniques to address threats instead of using deadly force when safe to do so . . .. The provisions in AB 392 will be reflected in both law enforcement agency policy and officer training statewide, and will further ensure that all officers in California are trained to a higher legal standard."[2]

(iv)   According to the current policy manual the CITY maintains online as required by Penal Code § 1365, the CITY's Policy 300.4, in regard to the use of deadly force does not contain the "necessary" wording of AB 392 and Penal Code Section 835(a), but rather, reads according to the previous versions

---

[2] Press Release, Office of Governor Gavin Newsom, Governor Gavin Newsom Signs Use-of-Force Bill (Aug. 19, 2019), https://www.gov.ca.gov/2019/08/19/ governor -gavin-newsom-signs-use-of-force-bill.

of Penal Code Section 835(a) by referencing only a "reasonableness" standard.  Based on the currently posted policy, CITY has not updated is deadly force policy to reflect the current "necessary" standard

(v) Specifically, CITY Policy 300.4, in regard to the use of deadly force, nearly follows verbatim Penal Code Section 835(a), except that the policy fails to include any reference to the word "necessary," and does not provide any guidance as to the new, separate standard as set forth in Penal Code Section 835(a) and AB 392.

68.     By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

69.     Defendants CITY and DOES 9-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

70.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOES 9-10 acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented,

maintained, and still tolerated by Defendants CITY and DOES 9-10 were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

71. The following are only a few examples of continued conduct by police officers working for the City of El Monte, which indicate an expressly adopted official policy or a longstanding practice or custom of the Defendant CITY:

a) In *Garcia, et al. v. City of El Monte, et al.*, Case No. 2:21-cv-00460-CAS-PVC, Plaintiffs alleged that City of El Monte police officers beat them upon their heads with batons and flashlights as they were complying with officers' demands. This case is ongoing.

b) In *Garcia, et al. v. Cty. of Riverside, et al.*, Case No. 5:21-cv-01181-JGB-SHK, Plaintiffs argued that the involved City of El Monte police officers and Federal Bureau of Investigation officers used unjustified deadly force against them when they posed no immediate threat. The case remains ongoing.

c) In *Gonzalez v. City of El Monte, et al.,* Case No. 2:16-cv-09637-FMO-JEM, Plaintiffs argued that the use of force, including deadly force and shooting of Alfred Gonzalez multiple times was excessive and unreasonable.  The parties settled the case for $65,000.

d) In *Sanchez v. City of El Monte, et al.,* Case No. 2:17-cv-03235-GW-AGWx, the City of El Monte settled with Plaintiffs for $760,000 after Plaintiffs alleged that City of El Monte police officers discharged their firearms at the decedent when the decedent posed no imminent threat of death or serious bodily injury to anyone.

e) Numerous other incidents of the use of excessive force by City of El Monte police officers also support Plaintiffs' claims for Municipal Liability in this case. For example, in *Gonzalez v. City of El Monte, et*

*al. (*Case No. 2:18-cv-02346)*,* the City of El Monte agreed to a

settlement after Plaintiff filed a civil rights lawsuit claiming the officers

used excessive and unreasonable force and unlawfully assaulted him

causing serious bodily injury; in *Garcia v. City of El Monte, et al.*

(Case No. 2:18-cv-05129-DSF-AGR), the City of El Monte settled with

the Plaintiff after a jury verdict in Plaintiff's favor, where Plaintiff

alleged the involved officers unlawfully arrested him and used

excessive and unreasonable force in so doing; in *Aguilera v. E. Ramos,*

*et al.* (Case No. 2:21-cv-01913-FMO-JEM) the City of El Monte

settled with a Plaintiff who argued the Defendants' use of a choke

restraint, punches to Plaintiff's face, kicks to the Plaintiff's groin,

repeated use of a taser, and strikes with batons that broke Plaintiff's

tibia bone constituted an excessive and unreasonable use of force; in

*Alvarado v. City of El Monte, et al.*, (Case No.: 2:14-cv-08430-RGK-

JEM), the City of El Monte settled a lawsuit with a Plaintiff who

alleged officers used excessive and unreasonable force when they shot

him multiple times, causing injury to his groin area, scrotum, and

testicles, and later beat him; in *Le, et al., v. City of El Monte, et al.,*

(Case No: 2:14-cv-04579-SJO-SS), the City of El Monte settled a

lawsuit brought by the family of a schizophrenic man who died after El

Monte officers tased, kicked, and beat him with a flashlight in his

home; in *Montes v. City of El Monte, et al.*, (Case No. 2:20-cv-00468-

SS) a jury awarded $235,000 in compensatory damages and $1,000,000

in punitive damages to the Plaintiff who City of El Monte police

officers used excessive force against when they struck Plaintiff in the

head and chest repeatedly with closed fists for no apparent reason.

72.    Accordingly, Defendants CITY and DOES 9-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

73.    Plaintiffs bring this claim individually and as successors in interest to DECEDENT and seek both survival and wrongful death damages under this claim. Plaintiffs also seek attorney's fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(By All Plaintiffs against Defendants CITY and DOES 9-10)

74.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 73 of their Complaint with the same force and effect as if fully set forth herein.

75.    DOE OFFICERS acted under color of law.

76.    The acts of DOE OFFICERS, as set forth above, including fatally shooting DECEDENT and using other undiscovered force against him, and then denying DECEDENT prompt and necessary medical care, deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

77.    Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of DOE OFFICERS ratified their acts and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of DOE OFFICERS's acts.

78.    Upon information and belief, a final policymaker has determined (or will determine) that the acts of DOE OFFICERS were "within policy."

79.    On information and belief, DOE OFFICERS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

80.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

81.    The following are only a few examples of continued conduct by police officers working for the City of El Monte, which indicate the City of El Monte's ratification of the use of force by its police officers:

a) In *Garcia,* et al. *v. City of El Monte, et al.*, Case No. 2:21-cv-00460-CAS-PVC, Plaintiffs alleged that City of El Monte police officers beat them upon their heads with batons and flashlights as they were complying with officers' demands. This case is ongoing.

b) In *Garcia*, et al. *v. Cty. of Riverside*, *et al.*, Case No. 5:21-cv-01181-JGB-SHK, Plaintiffs argued that the involved City of El Monte police officers and Federal Bureau of Investigation officers used unjustified deadly force against them when they posed no immediate threat.  The Case is ongoing.

c) In *Gonzalez v. City of El Monte, et al.,* Case No. 2:16-cv-09637-FMO-JEM, Plaintiffs argued that the use of force, including deadly force and shooting of Alfred Gonzalez multiple times was excessive and unreasonable.  The parties settled the case for $65,000.

d) In *Sanchez v. City of El Monte, et al.,* Case No. 2:17-cv-03235-GW-AGWx, the City of El Monte settled with Plaintiffs for $760,000 after Plaintiffs alleged that City of El Monte police officers discharged their firearms at the decedent when the decedent posed no imminent threat of death or serious bodily injury to anyone.

e) Numerous other incidents of the use of excessive force by City of El Monte police officers also support Plaintiffs' claims for Municipal Liability in this case. For example, in *Gonzalez v. City of El Monte*, *et al. (*Case No. 2:18-cv-02346)*,* the City of El Monte agreed to a settlement after Plaintiff filed a civil rights lawsuit claiming the officers used excessive and unreasonable force and unlawfully assaulted him causing serious bodily injury; in *Garcia v. City of El Monte, et al.* (Case No. 2:18-cv-05129-DSF-AGR), the City of El Monte settled with the Plaintiff after a jury verdict in Plaintiff's favor, where Plaintiff alleged the involved officers unlawfully arrested him and used excessive and unreasonable force in so doing; in *Aguilera v. E. Ramos, et al.* (Case No. 2:21-cv-01913-FMO-JEM) the City of El Monte settled with a Plaintiff who argued the Defendants' use of a choke restraint, punches to Plaintiff's face, kicks to the Plaintiff's groin, repeated use of a taser, and strikes with batons that broke Plaintiff's tibia bone constituted an excessive and unreasonable use of force; in *Alvarado v. City of El Monte, et al*., (Case No.: 2:14-cv-08430-RGK-JEM), the City of El Monte settled a lawsuit with a Plaintiff who alleged officers used excessive and unreasonable force when they shot him multiple times, causing injury to his groin area, scrotum, and testicles, and later beat him; in *Le, et al., v. City of El Monte, et al.,* (Case No: 2:14-cv-04579-SJO-SS), the City of El Monte settled a lawsuit brought by the family of a schizophrenic man who died after El Monte officers tased, kicked, and beat him with a flashlight in his home; in *Montes v. City of El Monte, et al*., (Case No. 2:20-cv-00468-SS) a jury awarded $235,000 in compensatory damages and $1,000,000 in punitive damages to the Plaintiff who City of El Monte police

officers used excessive force against when they struck Plaintiff in the head and chest repeatedly with closed fists for no apparent reason.

82.    Accordingly, Defendants COUNTY and DOES 9-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

83.    Plaintiffs bring this claim individually and as successors in interest to DECEDENT and seek both survival and wrongful death damages under this claim. Plaintiffs also seek attorney's fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

**Battery** (wrongful death and survival claim)

(By All Plaintiffs against All Defendants)

84.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 83 of their Complaint with the same force and effect as if fully set forth herein.

85.    On February 15, 2021, at approximately 2:00 p.m. in El Monte, California, Defendants DOES 1-8 approached the DECEDENT on foot, with weapons drawn, after allegedly receiving a dispatch regarding the DECEDENT.

86.    Defendants DOES 1-8 fired multiple rounds at DECEDENT without justification, striking him, and fatally wounding him.  When Defendants DOES 1-8 deployed the lethal rounds against DECEDENT, none of these Defendants issued a warning prior to using deadly force against DECEDENT.

87.    At the time of the officers' uses of force against him, DECEDENT did not pose an immediate threat of death or serious bodily injury to the deputies or to anyone else.  Therefore, all of their uses of force were excessive and objectively unreasonable.

88.    As a direct and proximate result of the conduct of DOES 1-8 as alleged above, DECEDENT sustained injuries, died from his injuries and also lost his

earning capacity.  As a direct and proximate result of the conduct of DOES 1-8 as alleged above, DECEDENT suffered survival damages pursuant to Code of Civil Procedure Section 377.34, including during the time that he survived after the shooting before dying at the hospital on the date of the shooting.

89.     The CITY is vicariously liable for the wrongful acts of DOES 1-8 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

90.     The conduct of DOES 1-8 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and DECEDENT, entitling Plaintiffs, individually and as the successor in interest to DECEDENT, to an award of exemplary and punitive damages as to Defendants DOES 1-8.

91.     Plaintiffs bring this claim individually and as successors in interest to DECEDENT, and seeks both survival damages and wrongful death damages under this claim.

## EIGHTH CLAIM FOR RELIEF

**Negligence** (wrongful death and survival claim)

(By all Plaintiffs against all Defendants)

92.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 91 of their Complaint with the same force and effect as if fully set forth herein.

93.     Police officers, including Defendants DOES 1-8, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using

any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

94.     Defendants DOES 1-8 breached this duty of care.  The actions and inactions of Defendants DOES 1-8 were negligent and reckless, including but not limited to:

        (a)   the failure to properly and adequately assess the need to use force against DECEDENT, including using a lethal firearm against DECEDENT;

        (b)   the negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence;

        (c)   the negligent use of force, including deadly force, against DECEDENT;

        (d)   the failure to provide prompt medical care to DECEDENT;

        (e)   the failure to properly train and supervise employees, both professional and non-professional, DOES 1-8;

        (f)   the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT; and

        (g)   the negligent communication of information during the incident.

95.     As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.  Also, as a direct and proximate result of Defendants DOES 1-8's conduct as alleged above, Plaintiffs have suffered emotional distress and mental anguish.  Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

96.     The CITY is vicariously liable for the wrongful acts of Defendants DOES 1-10 pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

97.     Plaintiffs bring this claim individually and as successors in interest to DECEDENT, and seeks both wrongful death and survival damages under this claim.

## NINTH CLAIM FOR RELIEF

### (Violation of Cal. Civil Code § 52.1)

(By All Plaintiffs against All Defendants)

98.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 97 of their Complaint with the same force and effect as if fully set forth herein.

99.     California Civil Code, Section 52.1 (the Bane Act), prohibits any person, including a police officer, from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion, including by the use of unconstitutionally excessive force. Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred if a person displays a reckless disregard for another person's civil rights.

100.    On information and belief, Defendants DOES 1-8, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against DECEDENT, including fatally shooting Decedent with a firearm without justification and denying Decedent necessary medical care. This shooting was excessive, objectively unreasonable, and especially reckless because Decedent was unarmed, Decedent did not commit

violence or threaten to commit violence against anyone including the officers, and Decedent did not pose an immediate threat of death or serious bodily injury to any person. Further, Defendants' shooting and other uses of force violated basic law enforcement training and generally accepted law enforcement standards. Defendants shot and killed Decedent without any legal justification.

101.   When Defendants DOES 1-8 fatally shot DECEDENT with a firearm while Decedent was not presenting an immediate threat of death or serious bodily injury and allowed him to lie bleeding on the ground, they interfered with his civil rights to be free from unreasonable searches and seizures, to be free from excessive force, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

102.   On information and belief, Defendants DOES 1-8 intentionally committed the above acts to discourage DECEDENT from exercising his civil rights or to prevent him from exercising such rights, which he was fully entitled to enjoy.

103.   On information and belief, DOES 1-8 intended to interfere with DECEDENT's constitutional rights, did interfere with DECEDENT's constitutional rights, and also acted with reckless disregard for DECEDENT's constitutional rights.

104.   On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by Defendants DOES 1-8 intended to discourage him from exercising his constitutional rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

105.    Defendants DOES 1-8 successfully interfered with the constitutional rights of DECEDENT and Plaintiffs.

106.   The conduct of Defendants DOES 1-8 was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

107.    The CITY is vicariously liable for the wrongful acts of Defendants DOES 1-8 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

108.    Defendants DOES 9-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

109.    The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to Defendants DOES 1-8.

110.    Plaintiffs bring this claim indiviudally and as successors in interest to DECEDENT and seek wrongful death and survival damages under this claim. Plaintiffs also seek punitive damages, costs, and attorney's fees under this claim pursuant to Cal. Civ. Code § 52 *et seq*.

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs FRANCISCO FLORES HUICOCHEA and NOEMI CALDERON request entry of judgment in their favor and against Defendants City of El Monte and Does 1-10, inclusive, as follows:

A.  For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

B.  For funeral and burial expenses, and loss of financial support;

C.  For punitive damages against the individual defendants in an amount to be proven at trial;

D.  For interest;

E.  For reasonable attorneys' fees, including litigation expenses;

F.  For costs of suit; and

G.  For such further other relief as the Court may deem just, proper, and appropriate.

DATED: January 13, 2022                LAW OFFICES OF DALE K. GALIPO

/s/ Dale K. Galipo

Dale K. Galipo
*Attorney for Plaintiffs*

COMPLAINT FOR DAMAGES

# **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED: January 13, 2022                LAW OFFICES OF DALE K. GALIPO

/s/ Dale K. Galipo

Dale K. Galipo
*Attorney for Plaintiffs*

COMPLAINT FOR DAMAGES